UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARK ANDERSON, individually and
on behalf of all those similarly situated,　　　　Case No.: 6:19-cv-184-Orl-31GJK

　　　　　　　　　　Plaintiff,

v.

PRIMO MANAGEMENT GROUP, INC.,
ISRAEL SANCHEZ, JR. and SEAN CHESSER

　　　　　　　　　　Defendants.
_____

**PARTIES' JOINT MOTION FOR APPROVAL OF SETTLEMENT**

The Parties,[1] by and through their undersigned attorneys, hereby file their Joint Motion for Approval of Settlement[2] of the above captioned case.  In support thereof, the attorneys for the Parties state as follows:

I.　　**Pertinent Facts**

1)　　In October of 2018, the Parties initiated settlement discussions related to the claims of Plaintiff, Mark Anderson, and the current[3] opt-in plaintiffs: Brandon Booth, Kenee Crawford, Kevin Smith, and Shana Wiles (collectively, the "Opt-in Plaintiffs").   Although numerous conferences were held and documents were exchanged, the Parties were unable to resolve the dispute.

---

[1] The Plaintiff, each opt-in plaintiff, and Defendants may hereinafter be collectively referred to as the "Parties."

[2] The Parties' Joint Motion for Approval of Settlement is being submitted in compliance with this Honorable Court's decision in *Bonetti v. Embarq Management Company*, 715 F.Supp.2d 1222 (M.D. Fla. 2009)(providing for expedited FLSA settlement approval); *Mathis v. Metro Corral Partners, Inc.*, 2014 WL 5039462 (M.D. Fla. Sept. 29, 2014) (Judge Smith relying upon *Bonetti*.); *Loven v. Occoquan Group Baldwin Park Corp*, 2014 WL 4639448 (M.D Fla. Sept. 16, 2014) (Judge Smith's recommendation to approve a settlement relying upon *Bonetti*).

2)      On January 29, 2019, Plaintiff filed a collective action alleging overtime and minimum wage violations under the Fair Labor Standards Act. ("FLSA"). (Doc. 1).

3)      On February 6, 2019, Plaintiff amended his complaint. (Doc. 6)

4)      On March 5, 2019, the Court entered its Standard Scheduling Order in FLSA cases. (Doc. 12).

5)      On March 11, 2019, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 13).

6)      Plaintiff responded by filing a memorandum in opposition to Defendants' motion. (Doc. 14).

7)      On April 23, 2019, this Honorable Court denied Defendants' motion (Doc. 17).

8)      On May 3, 2019, Defendants filed their Answer and Affirmative Defenses. (Doc. 18). In addition to denying the allegations, the Defendants raised nineteen affirmative defenses. (*See* Doc. 18 at 5-7).

9)      Plaintiff filed his Answers to Court Interrogatories (Doc. 16) and the Parties exchanged the requisite documents (for Plaintiff and Opt-in Plaintiffs) pursuant to the Court's FLSA Scheduling Order.

10)     On May 14, 2019 the Parties met in person for several hours to conduct the settlement conference pursuant to the Court's FLSA Scheduling Order. The Parties were unable to resolve the matter in its entirety but, in light of the fruitful discussions, the Parties continued settlement discussions.

11)     Over the length of the case, the Parties exchanged numerous records for the Plaintiff and the Opt-in Plaintiffs related to pay roll, commission tracker documents, internal

---

[3] Subsequent to the initial discussions, one individual elected not to proceed in the matter and is not a party to this litigation. Non-party rights are not impacted by this Motion or the subject settlement.

office forms, detailed damage calculations spreadsheets, and other documents relative to the FLSA claims.

12)     The Parties have now settled all claims and request this Honorable Court approve the settlements. (*See* Composite Exhibit "A").

13)     Because Plaintiff's and the Opt-in Plaintiffs' FLSA claims have been compromised, the Parties' settlements must be approved by this Court.

II.     **Legal Analysis**

14)     In *Bonetti*, the Court outlined an expedited procedure for approving FLSA settlements. *See Bonetti v. Embarq Management Company*, 715 F.Supp.2d 1222, 1228 (M.D. Fla. 2009). *Bonetti* requires the Parties to advise the Court: (1) whether the settlement constitutes a compromise of the plaintiff's FLSA claims; (2) if there is a compromise, the terms of the settlement, to include the factors and reasons considered in reaching the same and justifying the compromise of the plaintiff's claims; and (3) whether plaintiff's attorney's fee was agreed upon separately and without regard to the amount paid to the plaintiff. *Id*. at 1228. If the foregoing is provided to the Court by the parties and the settlement is patently reasonable, the Court will approve the settlement without a lodestar inquiry. *Id*.[4]

15)     The Parties agree that the settlement constitutes a compromise of the FLSA claims. *See Bonetti*, 715 F.Supp.2d at 1228.

16)     The terms of the settlements are contained in composite exhibit "A" to this motion. To summarize, the Plaintiff and the Opt-in Plaintiffs will each receive approximately 50 percent of their possible overtime damages plus an equal sum of liquidated damages. The Plaintiff and the Opt-in Plaintiffs will also receive all of their claimed minimum wage damages

---

[4] Prior to *Bonetti*, the starting point for Courts in the District to determine the reasonableness of an FLSA settlement pursuant to *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353

plus an equal sum of liquidated damages. Additionally, the Plaintiff and the Opt-in Plaintiffs will each receive $500 per person as consideration in exchange for a mutual general release.  Last, Plaintiff's and Opt-in Plaintiffs' attorney's fees and costs will be paid by the Defendants.

17)    The Plaintiff's and Opt-in Plaintiffs' claims are based upon working "off-the-clock" inside and outside of PMG's call center answering telephone calls, making telephone calls, providing prospective clients with information on PMG's services, and emailing clients. (*See* Doc. 1 at ¶ 24).

18)    The Plaintiff and Opt-in Plaintiffs claimed they performed such tasks "off-the-clock" during their employment period which resulted in unpaid overtime and unpaid minimum wages. (*See* Doc. 16 at ¶ 7(e); *see also* Doc. 20, Opt-in Plaintiff's Consents at ¶9).

Specifically, Mr. Anderson alleged that he worked 564.5 hours of overtime which translates to as much as $9,591.86 for overtime wages (after determining his overtime rate[5]). (Doc. 16 at ¶ 7(a) and (c)). By way of the Settlement Agreement, Mr. Anderson will receive $4,800.00 for overtime damages plus an equal sum of liquidated damages. Additionally, Mr. Anderson will receive the full unpaid minimum wages he alleged of $291.45 plus an equal sum of liquidated damages.  The settlement allocates $10,182.90 for the FLSA claims and $500 as additional consideration (discussed *infra*) for a total recovery by Mr. Anderson of $10,682.50 plus fees and costs.

Brandon Booth estimates that he could seek, based on a reasonable and just inference,

---

(11th Cir. 1982) was to conduct a lodestar analysis of Plaintiff's attorney fees.  *See Bonetti*, 2009 WL 2371407 *4.

[5] To obtain a dollar amount, Mr. Anderson's overtime rate must be calculated.  Because Mr. Anderson was not paid a straight hourly rate, but instead paid on a pure commission basis (*Id.* at ¶7(d)), his regular rate varied each week.  Mr. Anderson's regular rate of pay was first calculated by taking the total commission received for each specific work week and dividing it by the agreed total hours worked in the work week.  *Id.* at f.n. 2.  The overtime rate was then calculated by taking one-half his regular rate. *Id.* Mr. Anderson's overtime rate was then multiplied by the hours over 40 alleged to have been worked each work week.  *Id.*

compensation for additional 200 hours of unpaid overtime which could result in $3,300 judgment.[6] (*See* Composite Exhibit A*, Booth Agreement, Par. 1(B)). By way of the Settlement Agreement, Mr. Booth will receive $1,650.00 plus an equal sum of liquidated damages. Additionally, Mr. Booth will receive the full unpaid minimum wages he alleges of $675.00 plus an equal sum of liquidated damages.   The settlement allocates $4,650.00 for the FLSA claims and $500 as additional consideration (discussed *infra*) for a total recovery by Mr. Booth of $5,150.00 plus fees and costs.

Kenee Crawford estimates that he could seek, based on a reasonable and just inference, compensation for an additional 400 hours of unpaid overtime which could result in $10,700 judgment.[7]   (*See* Composite Exhibit A*, Crawford Agreement, Par. 1(B)). By way of the Settlement Agreement, Mr. Crawford will receive $5,350.00 plus an equal sum of liquidated damages. Additionally, Mr. Crawford will receive the full unpaid minimum wages he estimates could be owed of $57.25 plus an equal sum of liquidated damages. The settlement allocates $10,815.50 for the FLSA claims and $500 as additional consideration (discussed *infra*) for a total recovery by Mr. Crawford of $11,315.50 plus fees and costs.

Kevin Smith estimates that he could seek, based on a reasonable and just inference, compensation for an additional 100 hours of unpaid overtime which could result in $500.00 judgment.[8] (*See* Composite Exhibit A*, Smith Agreement, Par. 1(B)). By way of the Settlement Agreement, Mr. Smith will receive $250.00 plus an equal sum of liquidated damages. Compared to the Plaintiff and the Opt-in Plaintiff's, Mr. Smith had a low regular rate which resulted in very little overtime damages.  However, because of the low rate, Mr. Smith had a higher minimum

---

[6] Mr. Booth's overtime rate also fluctuated week to week because he was paid on a commission basis. 200 hours yields approximately $3,300 in unpaid overtime potential.
[7] Mr. Crawford's overtime rate also fluctuated week to week because he was paid on a commission basis.  400 hours yields approximately $10,700 in unpaid overtime potential.

wage claim.  By way of the settlement, Mr. Smith will receive his full minimum wages owed of $1,109.09 plus an equal sum of liquidated damages.  The settlement allocates $2,718.18 for the FLSA claims and $500 as additional consideration (discussed *infra*) for a total recovery by Mr. Smith of $3,218.18 plus fees and costs.

Shana Wiles estimates that she could seek, based on a reasonable and just inference, compensation for an additional 600 hours of unpaid overtime which could result in a $19,000 judgment.[9]  (*See* Composite Exhibit A, Wiles Agreement, Par. 1(B)).  By way of the Settlement Agreement, Mr. Wiles will receive $9,500.00 plus an equal sum of liquidated damages.  Additionally, Ms. Wiles will receive the full unpaid minimum wages she estimates could be owed of $57.25 plus an equal sum of liquidated damages.  The settlement allocates $19,115.50 for the FLSA claims and $500 as additional consideration (discussed *infra*) for a total recovery by Ms. Wiles of $19,615.50 plus fees and costs.

19)    Because of the complexity and wide range of possible outcomes, the Parties agree that the above settlements reflect reasonable compromises.  The factors considered in the compromise of the claims include the Defendants' position that Plaintiffs were not employees under the FLSA. (*See e.g.* Doc. 18 at ¶¶ 14, 18, 22, 25, and 26).   If the Defendants prevailed on this theory, the Plaintiff and the Opt-in Plaintiffs would receive nothing.  Plaintiff and the Opt-in Plaintiffs also considered Defendants' position that Plaintiff and Opt-in Plaintiffs were exempt from the FLSA.  (*See* Doc. 18 at Aff. Def. 18).  Again, if Defendants prevailed on this theory, Plaintiff and the Opt-in Plaintiffs would receive nothing.  Plaintiff and Opt-in Plaintiffs also considered Defendants' 29 U.S.C. § 259 defense to liability and 29 U.S.C. § 260 defense to liquidated damages. (*See* Doc. 18 at Aff. Def. 4,5, and 8).

---

[8] Mr. Smith's overtime rate also fluctuated week to week because he was paid on a commission basis. 100 hours yields approximately $500 in unpaid overtime potential.

Another major factor considered was that the claims were "off-the-clock" and proving such claims is difficult. *See e.g. Czopek v. TBC Retail Group, Inc., Case No.:* 8:14-cv-675-T-36TBM, 2016 U.S. Dist. LEXIS 168304 *6-7 (M.D. Fla. Nov. 7, 2016)(Court acknowledging the significant hurdle in proving off-the-clock work when there is a lack of record evidence and policies in place to ensure that off-the-clock work is not performed); *Alewel v. Dex One Serv.*, 2014 WL 502349, 2014 U.S. Dist. LEXIS 15493 *6 (D. Kan. Feb. 7, 2014)("This case involved the factually complicated off-the-clock claims that are difficult to prove."). Furthermore, it is undisputed that many of the overtime hours alleged to have been worked occurred off premises and after regular hours and the proving knowledge of such hours would be another hurdle. S*ee Fletcher v. Universal Tech. Inst., Inc.,* Case No.: 6:05-cv-585-Orl-31DAB, 2006 U.S. Dist. LEXIS 39705 *19 (M.D. Fla. June 15, 2006)("a plaintiff must show that his employer had knowledge … of his overtime worked.")(internal quotations and citations omitted).

20)    The Parties agree that the settlements achieved are fair and reasonable resolutions of bona fide disputes over the FLSA. *See Parker v. Building Service Teks, LLC.,* Case No.: 6:18-cv-834-Orl-31TBS (M.D. Fla. January 29, 2019) (Presnell, J.) (approving settlement where employee received approximately 50 percent of claimed damages in an off the clock FLSA case); *Teahl v. Lazy Flamingo, Inc.,* Case No.: 2:13-cv-833-FtM-38CM2016 U.S. Dist. Lexis 124896 *8 (M.D. Fla. Aug. 31, 2016)(approving settlement where employees received approximately 50 percent back pay and liquidated damages); *Tobar v. Khan*, No. 6:10-cv-239-Orl-22DAB, 2011 U.S. Dist. LEXIS 10182, 2011 WL 564588 *1 (M.D. Fla. Feb. 1, 2011)(approving settlement of $850 in unpaid wages and liquidated damages, which represented about one-fifth of the principal amount sought by the plaintiff, where there were disputed issues and defendant asserted counterclaims); *Hernandez v. Avalon Grp. Se., LLC*, No. 6:12-cv-99-Orl-

---

[9] Ms. Wiles' overtime rate also fluctuated week to week because she was paid on a commission

22TBS, 2012 U.S. Dist. LEXIS 131392, 2012 WL 4052351, at *2 (M.D. Fla. Aug. 28, 2012) (finding compromise of claims and waiver of liquidated damages reasonable where disputed issues were significant and parties were represented by counsel).

21)    Plaintiff and the Opt-in Plaintiffs agree that each has entered into the settlements knowingly and voluntarily and after having the opportunity to fully discuss the issues with counsel. *See generally King v. Wells Fargo Home Mortg.,* 2009 U.S. Dist. LEXIS 65721, 2009 WL 2370640 *2 (M.D. Fla. July 30, 2009) ("Because the Plaintiff agreed to the settlement figure which was entered into knowingly and voluntarily, after having the opportunity to fully discuss it with an attorney, the Court concludes that the proposed settlement is a fair and reasonable resolution of a bona fide dispute over the FLSA.").

22)    The Parties have been represented by experienced counsel in an adversarial context.  Thus, demonstrating the reasonableness of the settlement.  S*ee Bonetti*, 715 F.Supp.2d at 1227 ("If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable."); *see also Norris v. Lake Conway Landscaping of Orlando, Inc*., Case No.: 14-cv-1512-ORL-37KRS, 2015 U.S. Dist. LEXIS 75069 *5 (M.D. Fla. June 10, 2015).

23)    To further demonstrate that the settlement is fair and reasonable, the settlement agreement does not contain: (1) a confidentiality clause; (2) a no-rehire clause; or (3) a non-disparagement clause.  *See e.g. Hernandez v. Anderson, et. al*., 2015 U.S. Dist. LEXIS 80614 (M.D. Fla. June 6, 2015)(discussing why confidentiality agreements are not appropriate in FLSA cases); *accord Loven v. Occoquan Group Baldwin Park Corp.*, 2014 U.S. Dist. LEXIS 129464 (M.D. Fla. Sept. 16, 2016)(striking non-disparagement clause in a FLSA case).

---

basis.  600 hours yields approximately $19,000 in unpaid overtime potential.

24)     It is acknowledged that the settlement agreement does contain a general release which is supported by additional $500.00 to Plaintiff and $500.00 to each of the Opt-in Plaintiffs. Defendants also agreed to a general release that releases Plaintiff and each Opt-in Plaintiff from any and all claims.  Courts approve such releases and clauses under these circumstances.  *See e.g., Bonetti,* 715 F.Supp.2d at 1228 (Presnell, J.)(approving FLSA settlement with a general release where supported by an additional consideration); *Parker,* Case No.: 6:18-cv-834-Orl-31TBS (Doc. 22) (Presnell, J.)(approving FLSA settlement with a general release where supported by an additional consideration); *Middleton v. Sonic Brands L.L.C*., No. 6:13-cv-386-Orl-28KRS, 2013 U.S. Dist. LEXIS 129042, 2013 WL 4854767 *3 (M.D. Fla. Sept. 10, 2013) (approving a settlement agreement providing $100.00 as separate consideration for a general release clause); *Raynon v. RHA/Fern Park Mr., Inc.*, Case No.: 6:14-cv-1112-ORL-37TBS, 2014 U.S. Dist. LEXIS 151728, 2014 WL 5454395 *3 (M.D. Fla. Oct. 27, 2014) (approving a settlement agreement providing $500.00 as separate consideration for a general release clause); *Weldon v. Blackwoods Steakhouse*, Case No.: 6:14-cv-79-Orl-37TBS, 2014 U.S. Dist. LEXIS 123286, 2014 WL 4385593 *1 (M.D. Fla. Sept. 4, 2014); *Camal v. Shelter Mortg, Co., LLC.*, Case No.: 6:13-cv-706-Orl-36KRS, 2013 U.S. Dist. LEXIS 138341, 2013 5421955 *4 (M.D. Fla. Sept. 26, 2013); *Bacorn v. Palmer Auto Body & Glass, LLC.*, Case No.: 6:11-cv-1683-Orl-28KRS, 2012 U.S. Dist. LEXIS 183819, 2012 WL 6803586 (M.D. Fla. Dec. 19, 2012); *Miller v. Escalante-Spanish Wells*, LLC., Case No.: 2:14-cv-739-Ft.M-29CM, 2015 U.S. Dist. LEXIS (M.D. Fla. Sept. 15, 2015) (Doc. 27).[10]  Furthermore, these clauses were considered separately and negotiated separately.  *See Menjiva v. E&L Construction Serv*., Case No.: 6:14-cv-2057-

---

[10] Courts in this District have also approved FLSA settlements without expressing an opinion on the validity of the general release.  *Bell v. James C. Hall, et. al.*, Case No.:6:16-cv-218-CEM-TBS, 2016 U.S. Dist. LEXIS 128736 (M.D. Fla. Sept. 21, 2016) (Doc. 37 at 1, FN. 1)("the release of non-FLSA claims is generally not subject to judicial scrutiny.")(citations and quotations omitted).

ORL-31KRS, 2015 U.S. Dist. LEXIS 71151, 2015 WL 3485991 *2 (M.D. Fla. June 2, 2015) (declining to accept a general release in an FLSA case because the parties do not state that the release was negotiated separately). Finally, Plaintiff and the Opt-in plaintiffs are unaware of any other potential claims they may have against Defendants.

25) The Parties acknowledge that the Plaintiff's attorneys' fees were agreed upon separately and without regard to the amount paid to the Plaintiffs. *See Bonetti*, 715 F.Supp.2d at 1228.

26) If the Court finds any portion of the Settlement Agreement and Release objectionable, the Parties would request the Court invoke the agreement's severability clause and strike the objectionable portion from the agreement. *Monahan v. Rehoboth Hospitality, Inc.,* Case No.: 6:15-cv-1159-Orl-40KRS, 2015 U.S. Dist. LEXIS 169422 *4 (M.D. Fla. Dec. 18, 2015)("Where the FLSA settlement contains a severability provision, the Court would simply strike" the objectionable language from the agreement and enforce the remainder of the agreement.).

27) The Parties assert that because of the uncertainty of: (1) Plaintiff and Opt-in Plaintiffs being covered under the FLSA; (2) the FLSA exemption; (3) the Defendants' 29 U.S.C. § 259 defense; (4) Defendants' 29 U.S.C. § 260 defense; and (5) Plaintiff and each Opt-in Plaintiffs' off-the-clock damages, that they have adequately explained the compromise of their claims. Furthermore, the Parties assert that because: (1) there is adequate consideration and safeguards for the mutual general release; (2) there is no confidentiality clause, rehire clause, or non-disparagement clause; and (3) the attorney's fees and costs were agreed upon separately and without consideration to the amounts being paid for FLSA wages, the Agreement is fair, reasonable and in the Parties' mutual interest.

### III.   **Conclusion**

WHEREFORE, based on the foregoing, and pursuant to *Bonetti*, the Parties respectfully request that this Court approve their Settlement Agreement and dismiss Plaintiff's claim with prejudice.

Dated: June 5, 2019

Respectfully submitted,

| */s/ N. Ryan LaBar, Esq.* | _/s/ Sarah L. Metz_ |
|---|---|
| N. RYAN LABAR | SARAH L. METZ, ESQ. |
| Florida Bar No.: 0010535 | Florida Bar No. 91192 |
| rlabar @labaradams.com | FRANK S. GANZ, ESQ. |
| SCOTT C. ADAMS, ESQ. | Florida Bar No. 110596 |
| Florida Bar No.: 0573442 | Post Office Box 15200 |
| sadams @labaradams.com | Daytona Beach, FL 32115-5200 |
| LABAR & ADAMS, P.A. | Telephone No.: 386-254-6875 |
| 2300 East Concord Street | Primary:    eservice@daytonalaw.com |
| Orlando, Florida 32803 | Secondary: smetz@daytonalaw.com |
| (407) 835-8968 (telephone) | fganz@daytonalaw.com |
| (407) 835-8969 (facsimile) | |
| Attorneys for Plaintiffs | Attorneys for Defendants |

## SETTLEMENT AGREEMENT AND RELEASE

This **SETTLEMENT AGREEMENT AND RELEASE** (this "**Agreement**") is made and entered into as of June ___, 2019, by and between Brandon Booth ("Booth"), Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser (collectively referred to as "Parties").

## 1. RECITALS

This Agreement is made with reference to the following facts:

**A. WHEREAS**, Booth has asserted claims under the Fair Labor Standards Act ("FLSA") in the lawsuit pending in the United States District Court Middle District of Florida, Orlando Division, Case No. 6:19-cv-184-Orl-31GJK (the "Lawsuit");

**B. WHEREAS**, Booth asserts that if this matter were to proceed to trial, he would seek, based on a reasonable and just inference, compensation for additional 200 hours of unpaid overtime which could result in $3,300 judgment plus $675 in unpaid minimum wages (plus all other damages allowed by law including equal sums of liquidated damages);

**C. WHEREAS**, Booth acknowledges that he will be receiving less that the full amount of his alleged overtime damages pursuant to the Agreement but asserts and affirms that this Agreement is a fair compromise to the Lawsuit;

**D. WHEREAS**, this Agreement is made as the result of a bona fide dispute between the Parties regarding the validity of the Lawsuit and the purported claim that underlies the Lawsuit;

**E. WHEREAS**, the Parties desire to amicably resolve the Lawsuit together with any and all Claims, as hereinafter defined, that Booth may have against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser whether or not asserted in the Lawsuit; and

**F. WHEREAS**, the Parties have entered into good faith discussions resulting in this Agreement, and the Parties believe that this Agreement is in their mutual interest.

**NOW THEREFORE**, in consideration of the foregoing and other promises and mutual covenants contained herein, and other good and valuable consideration, receipt of which is hereby acknowledged, it is agreed as follows:

## 2. PAYMENTS

As consideration for this Agreement and the releases given herein, Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree as follows:

1

*BB*

(a) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Booth the sum of $1,650.00 for unpaid overtime hours worked which payment shall be reduced by any applicable withholding taxes and payroll deductions. This check shall be made payable to Booth and an IRS Form W-2 shall be issued.

(b) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Booth the sum of $1,650.00, for alleged liquidated damages, which amount shall not be subject to deductions or withholding. This check shall be made payable to Booth and an IRS Form 1099-Misc shall be issued.

(c) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Booth the sum of $675.00 for unpaid minimum wages which payment shall be reduced by any applicable withholding taxes and payroll deductions. This check shall be made payable to Booth and an IRS Form W-2 shall be issued.

(d) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Booth the sum of $675.00 for alleged liquidated damages related to minimum wages, which amount shall not be subject to deductions or withholding. This check shall be made payable to Booth and an IRS Form 1099-Misc shall be issued.

(e) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Booth the sum of $500.00, as and for consideration of the General Release in Paragraph 4(A) of this Agreement. This check shall be made payable to Booth and an IRS Form 1099-Misc shall be issued. The Parties specifically acknowledge that Booth's general release was resolved separately and without consideration of the amount paid for the FLSA wage claim.

(f) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Booth's attorney's fees and costs in the amount of $5,000.00 payable to the law offices of LaBar & Adams, P.A. for which a separate IRS Form 1099 shall issue to LaBar & Adams, P.A. The Parties acknowledge that Booth's attorneys' fees were agreed upon separately and without regard to the amount paid to Booth for unpaid overtime and liquidated damages. *See* Paragraph 5.

The payments described above shall be paid within fifteen (15) calendar days after the approval of this Agreement by the Court. For convenience, the payments in 2(a) and 2(c) may be combined into one payroll check (after withholdings). Similarly, the payments in 2(b), 2(d), and 2(e) may be combined into one check. Payment shall be delivered to Booth's counsel, N. Ryan LaBar, LaBar & Adams, P.A., 2300 East Concord Street, Orlando, Florida 32803.

## 3. RELEASE OF FLSA CLAIM

A.    In exchange for the payment outlined in Paragraphs 2(a)(b)(c)& (d) above, Booth does hereby remise, release, satisfy, and forever discharge Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  from any all claims, liabilities, or damages for unpaid overtime

*BB*

wages as alleged in the Lawsuit pursuant to the FLSA, liquidated damages, and attorney fees and costs.

      B.    FLSA ACKNOWLEDGEMENT- This agreement releases claims for unpaid overtime and minimum wages, liquidated damages, attorney's fees and costs under the FLSA. Booth acknowledges that this settlement is fair and reasonable. Booth also acknowledges the FLSA claim was the subject of a bona fide dispute between the Parties as to its validity and amount, and Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser have asserted that certain defenses apply to this claims including, without limitation, defenses relating to: (a) the FLSA does not apply to Booth because of independent contractor status ; (b) Booth not being entitled to receive overtime because of exemptions from the FLSA; (c) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's assertion that Booth's claim was barred by 29 U.S.C. § 259; (d) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's 29 U.S.C. § 260 defense to liquidated damages; and (e) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's defenses regarding knowledge of time claimed.

      C.    NOTICE UNDER THE FAIR LABOR STANDARDS ACT- This agreement contains a waiver and release of overtime and minimum wage claims that Booth has alleged under the FLSA. Booth's acceptance of this Agreement and payment under this agreement (which includes portion allocated to back unpaid overtime and minimum wages that Booth has claimed as due under the FLSA) means that Booth has given up any right to bring or continue a suit for wages under 216(b) of the FLSA as alleged in the Lawsuit. Section 216(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime wages and an equal amount of liquidated damages, plus attorney's fees and court costs. The statute of limitations for FLSA suits requires the suit for unpaid minimum wage and/or overtime compensation must be filed within 2 years of a violation of the Act, except that a suit for a willful violation must be filed within 3 years of the violation. Booth should not sign this Agreement unless he believes it is a fair and reasonable settlement of the claim for back wages due under the FLSA as alleged in the lawsuit.

## 4.  <u>MUTUAL RELEASES</u>

      The Parties specifically acknowledged that these General Releases were agreed upon without consideration of the FLSA claims at issue in the Lawsuit.

      A.    <u>Booth's General Release</u>

      (1)    <u>Release and Waiver</u>. In exchange for the consideration from Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser to Booth pursuant to Paragraph 2(e) above, Booth does hereby forever discharge Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser from any and all liabilities, costs, obligations, causes of action, demands and/or claims of any nature whatsoever, whether arising at law or in equity, which Booth may have had or may now have against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  , including, without limitation, **any claim for retaliation under Fla. Stat. §440.205, the right to seek remedies for wrongful discharge, the right to seek remedies under the Florida Civil Rights Act of 1992 and any predecessor thereof, the right to seek remedies under the Age Discrimination in**

*BB*

Employment Act of 1967 (as amended) (the "ADEA"), and the right to seek remedies under the Civil Rights Act of 1964 (as amended), the Equal Pay Act of 1963 (as amended), the Veterans Readjustment Assistance Act of 1974 (as amended), the Americans with Disabilities Act of 1990 (as amended), the Federal Whistleblower Act, the Florida Whistleblower Act, and/or any other similar federal, state  or local law, for retaliation or discrimination on the basis of the Employee's membership in any other legally protected category (including, without limitation, race, color, religion, national origin, sex, handicap or disability, marital status, sickle cell trait, or disabled veterans and veterans of the Vietnam Era).

(2)     Notwithstanding any contrary provision herein, by executing this Agreement, Booth is not waiving any rights or claims that arise after the date that Booth signs this Agreement.

(3)     Nothing in the Release including that which is contained in Paragraph 4 shall be construed to prohibit Booth from (i) filing a charge or complaint with the EEOC, NLRB, or other fair employment practices agency or (ii) participating in any investigation or proceeding conducted by the EEOC, NLRB, or other fair employment practices agency.

B.     Defendant's General Release of Booth

(1)     As additional consideration to Booth in exchange for the general release contained in Paragraph 4(A), Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  release and forever discharge Booth from any and all claims, demands, damages, actions, causes of action, contracts, or suits in equity, of any kind whatsoever, arising out of the employment relationship between the Parties or termination of that relationship, and any agreements (including non-compete agreements or covenants not to compete) which may survive the employment period, whether known or unknown, from the beginning of the world to the date this Agreement is signed, provided however, that this release does not apply to the obligations of Booth under this Agreement.

(2)     Notwithstanding any contrary provision herein, by executing this Agreement, Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser are not waiving any rights or claims that arise after the date that Booth signs this Agreement.

(3)     Nothing in the Release, including that which is contained in Paragraph 4 shall be construed to release Booth from any obligations under any non-compete agreements or covenants not to compete which may survive the employment period.

(4)     Nothing in the Agreement, including that which is contained in Paragraph 4, shall be construed to validate or invalidate other non-compete agreements or covenants not to compete that are not related to this action.

## 5.  ATTORNEY'S FEE AGREED UPON SEPARATELY

The attorneys' fees to be paid to Booth's counsel under Paragraph 2(f) above were agreed upon separately and without regard to the amount paid to Booth.  The total paid to Booth's counsel is full and final payment to cover completely all fees and costs owed to Booth's counsel for his

representation of Booth in the Lawsuit. Any alleged obligation of Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser to Booth for attorney's fees and costs is fully and finally satisfied by the payment to LaBar & Adams, P.A.

## 6.  NO ADMISSION OF LIABILITY

It is understood and acknowledged by Booth that Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser have denied, and still deny liability on the merits of the claim raised by Booth and that this Agreement is entered purely as a compromise of disputed matters for avoiding the uncertainty associated with potential litigation and costs of defending such litigation. The settlement of Booth's claims and the obligations created by this Agreement are not, and shall not be, construed as an admission of liability of the parties or any other person or entity on any claim.

## 7.  DEFAULT

If Primo Management Group Inc., Israel Sanchez, Jr., or Sean Chesser fail to make any payment as required in Paragraph 2 above, Booth shall be entitled to a consent judgment being taken jointly and severally against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser for the amounts stated, less any payments paid to Booth under this Agreement. Further, if any party defaults under this Agreement, the non-breaching party shall have the right to specific performance of this Agreement in addition to any other remedies available to the parties. Further, the prevailing party shall be entitled to all attorney's fees and costs incurred in the enforcement of this Agreement, whether or not suit is brought, including but not limited to attorney's fees and costs incurred in any bankruptcy, trial or appellate proceeding.

## 8.  SEVERABILITY AND INVALIDATION

The provisions of this Agreement are independent of, and severable from each other, and no provision shall be affected or rendered invalid or unenforceable because any other provision or provisions are invalid or unenforceable in whole or in part. Furthermore, if any provision of this Agreement is invalidated by a Court of competent jurisdiction, then all of the remaining provisions of this Agreement shall remain in full force and effect.

## 9.  SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

## 10. ENTIRE SETTLEMENT AGREEMENT

This Agreement constitutes the entire agreement between the parties regarding the settlement of the Lawsuit, including all claims made or that could have been made by either party therein, and supersedes all prior negotiations, understandings, agreements, and arrangements, both oral and written, among the parties.

BB

## 11. GOVERNING LAW

The laws of the State of Florida, excluding its choice of law provisions if such laws would result in the application of laws other than the laws of the State of Florida, shall govern any disputes between the parties to this Agreement, the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties to this Agreement.

## 12. COUNTERPARTS & ELECTRONIC TRANSMISSION

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. The parties agree that a signature page to this Agreement that is executed by a party and transmitted via facsimile or e-mail transmission shall have the same force and effect as an original signature page.

**THE PARTIES TO THIS AGREEMENT HEREBY CERTIFY THAT THEY HAVE READ ALL OF THE AGREEMENT AND FULLY UNDERSTAND ALL OF THE SAME.**

Brandon Booth

Dated: 6-14-19

By: _BS. Booth_

Primo Management Group, Inc.

Dated: 6/25/19

By: _Israel Sanchez_
Name: _Israel Sanchez_
Title: _Owner / CEO_

By: _____

Israel Sanchez, Jr.

Dated: 6/25/19

By: _Israel Sanchez_

6

Dated: 6/30

Sean Chesser

By: _____

Name: Sean Chesser

Title: CO-owner

## SETTLEMENT AGREEMENT AND RELEASE

This **SETTLEMENT AGREEMENT AND RELEASE** (this "**Agreement**") is made and entered into as of June _14_, 2019, by and between Kenee Crawford ("Crawford"), Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser (collectively referred to as "Parties").

## 1. RECITALS

This Agreement is made with reference to the following facts:

A. **WHEREAS,** Crawford has asserted claims under the Fair Labor Standards Act ("FLSA") in the lawsuit pending in the United States District Court Middle District of Florida, Orlando Division, Case No. 6:19-cv-184-Orl-31GJK (the "Lawsuit");

B. **WHEREAS,** Crawford asserts that if this matter were to proceed to trial, he would seek, based on a reasonable and just inference, compensation for an additional 400 hours of unpaid overtime which could result in $10,700 judgment plus $57.75 in unpaid minimum wages (plus all other damages allowed by law including equal sums of liquidated damages);

C. **WHEREAS,** Crawford acknowledges that he will be receiving less that the full amount of his alleged overtime damages pursuant to the Agreement but asserts and affirms that this Agreement is a fair compromise to the Lawsuit;

D. **WHEREAS,** this Agreement is made as the result of a bona fide dispute between the Parties regarding the validity of the Lawsuit and the purported claim that underlies the Lawsuit;

E. **WHEREAS,** the Parties desire to amicably resolve the Lawsuit together with any and all Claims, as hereinafter defined, that Crawford may have against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser whether or not asserted in the Lawsuit; and

F. **WHEREAS,** the Parties have entered into good faith discussions resulting in this Agreement, and the Parties believe that this Agreement is in their mutual interest.

**NOW THEREFORE**, in consideration of the foregoing and other promises and mutual covenants contained herein, and other good and valuable consideration, receipt of which is hereby acknowledged, it is agreed as follows:

## 2. PAYMENTS

As consideration for this Agreement and the releases given herein, Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree as follows:

1

(a) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Crawford the sum of $5,350.00 for unpaid overtime hours worked which payment shall be reduced by any applicable withholding taxes and payroll deductions. This check shall be made payable to Crawford and an IRS Form W-2 shall be issued.

(b) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Crawford the sum of $5,350.00 for alleged liquidated damages, which amount shall not be subject to deductions or withholding. This check shall be made payable to Crawford and an IRS Form 1099-Misc shall be issued.

(c) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Crawford the sum of $57.50 for unpaid minimum wages which payment shall be reduced by any applicable withholding taxes and payroll deductions. This check shall be made payable to Crawford and an IRS Form W-2 shall be issued.

(d) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Crawford the sum of $57.50 for alleged liquidated damages related to minimum wages which amount shall not be subject to deductions or withholding. This check shall be made payable to Crawford and an IRS Form 1099-Misc shall be issued.

(e) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Crawford the sum of $500.00, as and for consideration of the General Release in Paragraph 4(A) of this Agreement. This check shall be made payable to Crawford and an IRS Form 1099-Misc shall be issued. The Parties specifically acknowledge that Crawford's general release was resolved separately and without consideration of the amount paid for the FLSA wage claim.

(f) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Crawford's attorney's fees and costs in the amount of $5,000.00 payable to the law offices of LaBar & Adams, P.A. for which a separate IRS Form 1099 shall issue to LaBar & Adams, P.A. The Parties acknowledge that Crawford's attorneys' fees were agreed upon separately and without regard to the amount paid to Crawford for unpaid overtime and liquidated damages. *See* Paragraph 5.

The payments described above shall be paid within fifteen (15) calendar days after the approval of this Agreement by the Court. For convenience, the payments in 2(a) and 2(c) may be combined into one payroll check (after withholdings). Similarly, the payments in 2(b), 2(d), and 2(e) may be combined into one check. Payment shall be delivered to Crawford's counsel, N. Ryan LaBar, LaBar & Adams, P.A., 2300 East Concord Street, Orlando, Florida 32803.

3. **RELEASE OF FLSA CLAIM**

A.    In exchange for the payment outlined in Paragraphs 2(a)(b)(c)& (d) above, Crawford does hereby remise, release, satisfy, and forever discharge Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser from any all claims, liabilities, or damages for unpaid

overtime wages as alleged in the Lawsuit pursuant to the FLSA, liquidated damages, and attorney fees and costs.

B.     FLSA ACKNOWLEDGEMENT- This agreement releases claims for unpaid overtime and minimum wages, liquidated damages, attorney's fees and costs under the FLSA. Crawford acknowledges that this settlement is fair and reasonable.  Crawford also acknowledges the FLSA claim was the subject of a bona fide dispute between the Parties as to its validity and amount, and Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  have asserted that certain defenses apply to this claims including, without limitation, defenses relating to: (a) the FLSA does not apply to Crawford because of independent contractor status ; (b) Crawford not being entitled to receive overtime because of exemptions from the FLSA; (c) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's assertion that Crawford's claim was barred by 29 U.S.C. § 259; (d) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's 29 U.S.C. § 260 defense to liquidated damages; and (e) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's defenses regarding knowledge of time claimed. ˙

C.     NOTICE UNDER THE FAIR LABOR STANDARDS ACT- This agreement contains a waiver and release of overtime and minimum wage claims that Crawford has alleged under the FLSA.  Crawford's acceptance of this Agreement and payment under this agreement (which includes portion allocated to back unpaid overtime and minimum wages that Crawford has claimed as due under the FLSA) means that Crawford has given up any right to bring or continue a suit for wages under 216(b) of the FLSA as alleged in the Lawsuit.  Section 216(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime wages and an equal amount of liquidated damages, plus attorney's fees and court costs.  The statute of limitations for FLSA suits requires the suit for unpaid minimum wage and/or overtime compensation must be filed within 2 years of a violation of the Act, except that a suit for a willful violation must be filed within 3 years of the violation.  Crawford should not sign this Agreement unless he believes it is a fair and reasonable settlement of the claim for back wages due under the FLSA as alleged in the lawsuit.

## 4.  **MUTUAL RELEASES**

The Parties specifically acknowledged that these General Releases were agreed upon without consideration of the FLSA claims at issue in the Lawsuit.

### A.     **Crawford's General Release**

(1)     Release and Waiver.  In exchange for the consideration from Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  to Crawford pursuant to Paragraph 2(e) above, Crawford does hereby forever discharge Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  from any and all liabilities, costs, obligations, causes of action, demands and/or claims of any nature whatsoever, whether arising at law or in equity, which Crawford may have had or may now have against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser , including, without limitation, **any claim for retaliation under Fla. Stat. §440.205, the right to seek remedies for wrongful discharge, the right to seek remedies under the Florida Civil Rights Act of 1992 and any predecessor thereof, the right to seek remedies under the Age Discrimination in**

3

Employment Act of 1967 (as amended) (the "ADEA"), and the right to seek remedies under the Civil Rights Act of 1964 (as amended), the Equal Pay Act of 1963 (as amended), the Veterans Readjustment Assistance Act of 1974 (as amended), the Americans with Disabilities Act of 1990 (as amended), the Federal Whistleblower Act, the Florida Whistleblower Act, and/or any other similar federal, state   or local law, for retaliation or discrimination on the basis of the Employee's membership in any other legally protected category (including, without limitation, race, color, religion, national origin, sex, handicap or disability, marital status, sickle cell trait, or disabled veterans and veterans of the Vietnam Era).

(2)     Notwithstanding any contrary provision herein, by executing this Agreement, Crawford is not waiving any rights or claims that arise after the date that Crawford signs this Agreement.

(3)     Nothing in the Release including that which is contained in Paragraph 4 shall be construed to prohibit Crawford from (i) filing a charge or complaint with the EEOC, NLRB, or other fair employment practices agency or (ii) participating in any investigation or proceeding conducted by the EEOC, NLRB, or other fair employment practices agency.

**B.     Defendant's General Release of Crawford**

(1)     As additional consideration to Crawford in exchange for the general release contained in Paragraph 4(A), Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  release and forever discharge Crawford from any and all claims, demands, damages, actions, causes of action, contracts, or suits in equity, of any kind whatsoever, arising out of the employment relationship between the Parties or termination of that relationship, and any agreements (including non-compete agreements or covenants not to compete) which may survive the employment period, whether known or unknown, from the beginning of the world to the date this Agreement is signed, provided however, that this release does not apply to the obligations of Crawford under this Agreement.

(2)     Notwithstanding any contrary provision herein, by executing this Agreement, Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser are not waiving any rights or claims that arise after the date that Crawford signs this Agreement.

(3)     Nothing in the Release, including that which is contained in Paragraph 4 shall be construed to release Crawford from any obligations under any non-compete agreements or covenants not to compete which may survive the employment period.

(4)     Nothing in the Agreement, including that which is contained in Paragraph 4, shall be construed to validate or invalidate other non-compete agreements or covenants not to compete that are not related to this action.

## 5.  ATTORNEY'S FEE AGREED UPON SEPARATELY

The attorneys' fees to be paid to Crawford's counsel under Paragraph 2(f) above were agreed upon separately and without regard to the amount paid to Crawford. The total paid to Crawford's counsel is full and final payment to cover completely all fees and costs owed to

4

Crawford's counsel for his representation of Crawford in the Lawsuit. Any alleged obligation of Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser to Crawford for attorney's fees and costs is fully and finally satisfied by the payment to LaBar & Adams, P.A.

## 6.  NO ADMISSION OF LIABILITY

It is understood and acknowledged by Crawford that Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  have denied, and still deny liability on the merits of the claim raised by Crawford and that this Agreement is entered purely as a compromise of disputed matters for avoiding the uncertainty associated with potential litigation and costs of defending such litigation. The settlement of Crawford's claims and the obligations created by this Agreement are not, and shall not be, construed as an admission of liability of the parties or any other person or entity on any claim.

## 7.  DEFAULT

If Primo Management Group Inc., Israel Sanchez, Jr., or Sean Chesser  fail to make any payment as required in Paragraph 2 above, Crawford shall be entitled to a consent judgment being taken jointly and severally against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  for the amounts stated, less any payments paid to Crawford under this Agreement. Further, if any party defaults under this Agreement, the non-breaching party shall have the right to specific performance of this Agreement in addition to any other remedies available to the parties. Further, the prevailing party shall be entitled to all attorney's fees and costs incurred in the enforcement of this Agreement, whether or not suit is brought, including but not limited to attorney's fees and costs incurred in any bankruptcy, trial or appellate proceeding.

## 8.  SEVERABILITY AND INVALIDATION

The provisions of this Agreement are independent of, and severable from each other, and no provision shall be affected or rendered invalid or unenforceable because any other provision or provisions are invalid or unenforceable in whole or in part. Furthermore, if any provision of this Agreement is invalidated by a Court of competent jurisdiction, then all of the remaining provisions of this Agreement shall remain in full force and effect.

## 9.  SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

## 10. ENTIRE SETTLEMENT AGREEMENT

This Agreement constitutes the entire agreement between the parties regarding the settlement of the Lawsuit, including all claims made or that could have been made by either party therein, and supersedes all prior negotiations, understandings, agreements, and arrangements, both oral and written, among the parties.

## 11. <u>GOVERNING LAW</u>

The laws of the State of Florida, excluding its choice of law provisions if such laws would result in the application of laws other than the laws of the State of Florida, shall govern any disputes between the parties to this Agreement, the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties to this Agreement.

## 12. <u>COUNTERPARTS & ELECTRONIC TRANSMISSION</u>

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. The parties agree that a signature page to this Agreement that is executed by a party and transmitted via facsimile or e-mail transmission shall have the same force and effect as an original signature page.

**THE PARTIES TO THIS AGREEMENT HEREBY CERTIFY THAT THEY HAVE READ ALL OF THE AGREEMENT AND FULLY UNDERSTAND ALL OF THE SAME.**

Kenee Crawford

Dated: 6/14/19

By: _____

Primo Management Group, Inc.

Dated: 6/25/19

By: _____

Name: Israel Sanchez

Title: Owner/Ceo

By: _____

Israel Sanchez, Jr.

Dated: _____

By: _____

6

Dated: 6/30 _____

Sean Chesser

By: _____

Name: Sean Chesser

Title: Co-owner

## SETTLEMENT AGREEMENT AND RELEASE

This **SETTLEMENT AGREEMENT AND RELEASE** (this "**Agreement**") is made and entered into as of June _16_, 2019, by and between Kevin Smith ("Smith"), Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser (collectively referred to as "Parties").

## 1. RECITALS

This Agreement is made with reference to the following facts:

A. **WHEREAS,** Smith has asserted claims under the Fair Labor Standards Act ("FLSA") in the lawsuit pending in the United States District Court Middle District of Florida, Orlando Division, Case No. 6:19-cv-184-Orl-31GJK (the "Lawsuit");

B. **WHEREAS,** Smith asserts that if this matter were to proceed to trial, he would seek, based on a reasonable and just inference, compensation for an additional 100 hours of unpaid overtime which could result in $500.00 judgment plus $1,109.09 in unpaid minimum wages (plus all other damages allowed by law including equal sums of liquidated damages);

C. **WHEREAS,** Smith acknowledges that he will be receiving less that the full amount of his alleged overtime damages pursuant to the Agreement but asserts and affirms that this Agreement is a fair compromise to the Lawsuit;

D. **WHEREAS,** this Agreement is made as the result of a bona fide dispute between the Parties regarding the validity of the Lawsuit and the purported claim that underlies the Lawsuit;

E. **WHEREAS,** the Parties desire to amicably resolve the Lawsuit together with any and all Claims, as hereinafter defined, that Smith may have against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser whether or not asserted in the Lawsuit; and

F. **WHEREAS,** the Parties have entered into good faith discussions resulting in this Agreement, and the Parties believe that this Agreement is in their mutual interest.

**NOW THEREFORE,** in consideration of the foregoing and other promises and mutual covenants contained herein, and other good and valuable consideration, receipt of which is hereby acknowledged, it is agreed as follows:

## 2. PAYMENTS

As consideration for this Agreement and the releases given herein, Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree as follows:

1

(a) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Smith the sum of $250.00 for unpaid overtime hours worked which payment shall be reduced by any applicable withholding taxes and payroll deductions. This check shall be made payable to Smith and an IRS Form W-2 shall be issued.

(b) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Smith the sum of $250.00 for alleged liquidated damages, which amount shall not be subject to deductions or withholding. This check shall be made payable to Smith and an IRS Form 1099-Misc shall be issued.

(c) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Smith the sum of $1,109.09 for unpaid minimum wages which payment shall be reduced by any applicable withholding taxes and payroll deductions. This check shall be made payable to Smith and an IRS Form W-2 shall be issued.

(d) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Smith the sum of $1,109.09 for alleged liquidated damages related to minimum wages which amount shall not be subject to deductions or withholding. This check shall be made payable to Smith and an IRS Form 1099-Misc shall be issued.

(e) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Smith the sum of $500.00, as and for consideration of the General Release in Paragraph 4(A) of this Agreement. This check shall be made payable to Smith and an IRS Form 1099-Misc shall be issued. The Parties specifically acknowledge that Smith's general release was resolved separately and without consideration of the amount paid for the FLSA wage claim.

(f) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Smith's attorney's fees and costs in the amount of $5,000.00 payable to the law offices of LaBar & Adams, P.A. for which a separate IRS Form 1099 shall issue to LaBar & Adams, P.A. The Parties acknowledge that Smith's attorneys' fees were agreed upon separately and without regard to the amount paid to Smith for unpaid overtime and liquidated damages. *See* Paragraph 5.

The payments described above shall be paid within fifteen (15) calendar days after the approval of this Agreement by the Court. For convenience, the payments in 2(a) and 2(c) may be combined into one payroll check (after withholdings). Similarly, the payments in 2(b), 2(d), and 2(e) may be combined into one check. Payment shall be delivered to Smith's counsel, N. Ryan LaBar, LaBar & Adams, P.A., 2300 East Concord Street, Orlando, Florida 32803.

## 3. RELEASE OF FLSA CLAIM

A.    In exchange for the payment outlined in Paragraphs 2(a)(b)(c)& (d) above, Smith does hereby remise, release, satisfy, and forever discharge Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  from any all claims, liabilities, or damages for unpaid overtime

wages as alleged in the Lawsuit pursuant to the FLSA, liquidated damages, and attorney fees and costs.

      B.    FLSA ACKNOWLEDGEMENT- This agreement releases claims for unpaid overtime and minimum wages, liquidated damages, attorney's fees and costs under the FLSA. Smith acknowledges that this settlement is fair and reasonable. Smith also acknowledges the FLSA claim was the subject of a bona fide dispute between the Parties as to its validity and amount, and Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser have asserted that certain defenses apply to this claims including, without limitation, defenses relating to: (a) the FLSA does not apply to Smith because of independent contractor status ; (b) Smith not being entitled to receive overtime because of exemptions from the FLSA; (c) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's assertion that Smith's claim was barred by 29 U.S.C. § 259; (d) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's 29 U.S.C. § 260 defense to liquidated damages; and (e) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's defenses regarding knowledge of time claimed.

      C.    NOTICE UNDER THE FAIR LABOR STANDARDS ACT- This agreement contains a waiver and release of overtime and minimum wage claims that Smith has alleged under the FLSA. Smith's acceptance of this Agreement and payment under this agreement (which includes portion allocated to back unpaid overtime and minimum wages that Smith has claimed as due under the FLSA) means that Smith has given up any right to bring or continue a suit for wages under 216(b) of the FLSA as alleged in the Lawsuit. Section 216(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime wages and an equal amount of liquidated damages, plus attorney's fees and court costs. The statute of limitations for FLSA suits requires the suit for unpaid minimum wage and/or overtime compensation must be filed within 2 years of a violation of the Act, except that a suit for a willful violation must be filed within 3 years of the violation. Smith should not sign this Agreement unless he believes it is a fair and reasonable settlement of the claim for back wages due under the FLSA as alleged in the lawsuit.

## 4.  MUTUAL RELEASES

      The Parties specifically acknowledged that these General Releases were agreed upon without consideration of the FLSA claims at issue in the Lawsuit.

### A.  Smith's General Release

      (1)    Release and Waiver. In exchange for the consideration from Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser to Smith pursuant to Paragraph 2(e) above, Smith does hereby forever discharge Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser from any and all liabilities, costs, obligations, causes of action, demands and/or claims of any nature whatsoever, whether arising at law or in equity, which Smith may have had or may now have against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser , including, without limitation, **any claim for retaliation under Fla. Stat. §440.205, the right to seek remedies for wrongful discharge, the right to seek remedies under the Florida Civil Rights Act of 1992 and any predecessor thereof, the right to seek remedies under the Age Discrimination in**

3

Employment Act of 1967 (as amended) (the "ADEA"), and the right to seek remedies under the Civil Rights Act of 1964 (as amended), the Equal Pay Act of 1963 (as amended), the Veterans Readjustment Assistance Act of 1974 (as amended), the Americans with Disabilities Act of 1990 (as amended), the Federal Whistleblower Act, the Florida Whistleblower Act, and/or any other similar federal, state  or local law, for retaliation or discrimination on the basis of the Employee's membership in any other legally protected category (including, without limitation, race, color, religion, national origin, sex, handicap or disability, marital status, sickle cell trait, or disabled veterans and veterans of the Vietnam Era).

(2)    Notwithstanding any contrary provision herein, by executing this Agreement, Smith is not waiving any rights or claims that arise after the date that Smith signs this Agreement.

(3)    Nothing in the Release including that which is contained in Paragraph 4 shall be construed to prohibit Smith from (i) filing a charge or complaint with the EEOC, NLRB, or other fair employment practices agency or (ii) participating in any investigation or proceeding conducted by the EEOC, NLRB, or other fair employment practices agency.

### B.    Defendant's General Release of Smith

(1)    As additional consideration to Smith in exchange for the general release contained in Paragraph 4(A), Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser release and forever discharge Smith from any and all claims, demands, damages, actions, causes of action, contracts, or suits in equity, of any kind whatsoever, arising out of the employment relationship between the Parties or termination of that relationship, and any agreements (including non-compete agreements or covenants not to compete) which may survive the employment period, whether known or unknown, from the beginning of the world to the date this Agreement is signed, provided however, that this release does not apply to the obligations of Smith under this Agreement.

(2)    Notwithstanding any contrary provision herein, by executing this Agreement, Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser are not waiving any rights or claims that arise after the date that Smith signs this Agreement.

(3)    Nothing in the Release, including that which is contained in Paragraph 4 shall be construed to release Smith from any obligations under any non-compete agreements or covenants not to compete which may survive the employment period.

(4)    Nothing in the Agreement, including that which is contained in Paragraph 4, shall be construed to validate or invalidate other non-compete agreements or covenants not to compete that are not related to this action.

## 5.  ATTORNEY'S FEE AGREED UPON SEPARATELY

The attorneys' fees to be paid to Smith's counsel under Paragraph 2(f) above were agreed upon separately and without regard to the amount paid to Smith. The total paid to Smith's counsel is full and final payment to cover completely all fees and costs owed to Smith's counsel for his representation of Smith in the Lawsuit. Any alleged obligation of Primo Management Group Inc.,

4

Israel Sanchez, Jr., and Sean Chesser to Smith for attorney's fees and costs is fully and finally satisfied by the payment to LaBar & Adams, P.A.

## 6.  NO ADMISSION OF LIABILITY

It is understood and acknowledged by Smith that Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  have denied, and still deny liability on the merits of the claim raised by Smith and that this Agreement is entered purely as a compromise of disputed matters for avoiding the uncertainty associated with potential litigation and costs of defending such litigation. The settlement of Smith's claims and the obligations created by this Agreement are not, and shall not be, construed as an admission of liability of the parties or any other person or entity on any claim.

## 7.  DEFAULT

If Primo Management Group Inc., Israel Sanchez, Jr., or Sean Chesser  fail to make any payment as required in Paragraph 2 above, Smith shall be entitled to a consent judgment being taken jointly and severally against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  for the amounts stated, less any payments paid to Smith under this Agreement. Further, if any party defaults under this Agreement, the non-breaching party shall have the right to specific performance of this Agreement in addition to any other remedies available to the parties. Further, the prevailing party shall be entitled to all attorney's fees and costs incurred in the enforcement of this Agreement, whether or not suit is brought, including but not limited to attorney's fees and costs incurred in any bankruptcy, trial or appellate proceeding.

## 8.  SEVERABILITY AND INVALIDATION

The provisions of this Agreement are independent of, and severable from each other, and no provision shall be affected or rendered invalid or unenforceable because any other provision or provisions are invalid or unenforceable in whole or in part. Furthermore, if any provision of this Agreement is invalidated by a Court of competent jurisdiction, then all of the remaining provisions of this Agreement shall remain in full force and effect.

## 9.  SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

## 10. ENTIRE SETTLEMENT AGREEMENT

This Agreement constitutes the entire agreement between the parties regarding the settlement of the Lawsuit, including all claims made or that could have been made by either party therein, and supersedes all prior negotiations, understandings, agreements, and arrangements, both oral and written, among the parties.

## 11. GOVERNING LAW

The laws of the State of Florida, excluding its choice of law provisions if such laws would result in the application of laws other than the laws of the State of Florida, shall govern any disputes between the parties to this Agreement, the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties to this Agreement.

## 12. COUNTERPARTS & ELECTRONIC TRANSMISSION

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. The parties agree that a signature page to this Agreement that is executed by a party and transmitted via facsimile or e-mail transmission shall have the same force and effect as an original signature page.

**THE PARTIES TO THIS AGREEMENT HEREBY CERTIFY THAT THEY HAVE READ ALL OF THE AGREEMENT AND FULLY UNDERSTAND ALL OF THE SAME.**

Kevin Smith

Dated: 6/16/19

By: _____

Primo Management Group, Inc.

Dated: 6/24/19

By: _____

Name: Isreal Sanchez

Title: Owner/CEO

By: _____

Israel Sanchez, Jr.

Dated: _____

By: _____

6

Dated: _6/30_____

Sean Chesser

By: _____

Name: _Sean Chesser_

Title: _CO-Owner_

## SETTLEMENT AGREEMENT AND RELEASE

This **SETTLEMENT AGREEMENT AND RELEASE** (this "**Agreement**") is made and entered into as of June 14, 2019, by and between Mark Anderson ("Anderson"), Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser (collectively referred to as "Parties").

## 1.  RECITALS

This Agreement is made with reference to the following facts:

**A. WHEREAS,** Anderson has asserted claims under the Fair Labor Standards Act ("FLSA") in the lawsuit pending in the United States District Court Middle District of Florida, Orlando Division, Case No. 6:19-cv-184-Orl-31GJK (the "Lawsuit");

**B. WHEREAS,** Anderson asserted in his Answers to Court Interrogatories that if this matter were to proceed to trial, he would seek, based on a reasonable and just inference, compensation for an additional 564.5 hours of unpaid overtime which could result in a $9,600 judgment plus $291.45 in unpaid minimum wages (plus all other damages allowed by law including equal sums of liquidated damages);

**C. WHEREAS,** Anderson acknowledges that he will be receiving less that the full amount of his alleged overtime damages pursuant to the Agreement but asserts and affirms that this Agreement is a fair compromise to the Lawsuit;

**D. WHEREAS,** this Agreement is made as the result of a bona fide dispute between the Parties regarding the validity of the Lawsuit and the purported claim that underlies the Lawsuit;

**E. WHEREAS,** the Parties desire to amicably resolve the Lawsuit together with any and all Claims, as hereinafter defined, that Anderson may have against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser whether or not asserted in the Lawsuit; and

**F. WHEREAS,** the Parties have entered into good faith discussions resulting in this Agreement, and the Parties believe that this Agreement is in their mutual interest.

**NOW THEREFORE,** in consideration of the foregoing and other promises and mutual covenants contained herein, and other good and valuable consideration, receipt of which is hereby acknowledged, it is agreed as follows:

## 2.  PAYMENTS

As consideration for this Agreement and the releases given herein, Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree as follows:

1

(a) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Anderson the sum of $4,800.00 for unpaid overtime hours worked which payment shall be reduced by any applicable withholding taxes and payroll deductions. This check shall be made payable to Anderson and an IRS Form W-2 shall be issued.

(b) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Anderson the sum of $4,800.00 for alleged liquidated damages, which amount shall not be subject to deductions or withholding. This check shall be made payable to Anderson and an IRS Form 1099-Misc shall be issued.

(c) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Anderson the sum of $291.45 for unpaid minimum wages which payment shall be reduced by any applicable withholding taxes and payroll deductions. This check shall be made payable to Anderson and an IRS Form W-2 shall be issued.

(d) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Anderson the sum of $291.45 for alleged liquidated damages related to minimum wages which amount shall not be subject to deductions or withholding. This check shall be made payable to Anderson and an IRS Form 1099-Misc shall be issued.

(e) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Anderson the sum of $500.00, as and for consideration of the General Release in Paragraph 4(A) of this Agreement. This check shall be made payable to Anderson and an IRS Form 1099-Misc shall be issued. The Parties specifically acknowledge that Anderson's general release was resolved separately and without consideration of the amount paid for the FLSA wage claim.

(f) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Anderson's attorney's fees and costs in the amount of $5,000.00 payable to the law offices of LaBar & Adams, P.A. for which a separate IRS Form 1099 shall issue to LaBar & Adams, P.A. The Parties acknowledge that Anderson's attorneys' fees were agreed upon separately and without regard to the amount paid to Anderson for unpaid overtime and liquidated damages. *See* Paragraph 5.

The payments described above shall be paid within fifteen (15) calendar days after the approval of this Agreement by the Court. For convenience, the payments in 2(a) and 2(c) may be combined into one payroll check (after withholdings). Similarly, the payments in 2(b), 2(d), and 2(e) may be combined into one check. Payment shall be delivered to Anderson's counsel, N. Ryan LaBar, LaBar & Adams, P.A., 2300 East Concord Street, Orlando, Florida 32803.

## 3. RELEASE OF FLSA CLAIM

A.    In exchange for the payment outlined in Paragraphs 2(a)(b)(c)& (d) above, Anderson does hereby remise, release, satisfy, and forever discharge Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  from any all claims, liabilities, or damages for unpaid

2

overtime wages as alleged in the Lawsuit pursuant to the FLSA, liquidated damages, and attorney fees and costs.

B.    FLSA ACKNOWLEDGEMENT- This agreement releases claims for unpaid overtime and minimum wages, liquidated damages, attorney's fees and costs under the FLSA. Anderson acknowledges that this settlement is fair and reasonable.  Anderson also acknowledges the FLSA claim was the subject of a bona fide dispute between the Parties as to its validity and amount, and Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  have asserted that certain defenses apply to this claims including, without limitation, defenses relating to: (a) the FLSA does not apply to Anderson because of independent contractor status ; (b) Anderson not being entitled to receive overtime because of exemptions from the FLSA; (c) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's assertion that Anderson's claim was barred by 29 U.S.C. § 259; (d) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's 29 U.S.C. § 260 defense to liquidated damages; and (e) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's defenses regarding knowledge of time claimed.

C.    NOTICE UNDER THE FAIR LABOR STANDARDS ACT- This agreement contains a waiver and release of overtime and minimum wage claims that Anderson has alleged under the FLSA.  Anderson's acceptance of this Agreement and payment under this agreement (which includes portion allocated to back unpaid overtime and minimum wages that Anderson has claimed as due under the FLSA) means that Anderson has given up any right to bring or continue a suit for wages under 216(b) of the FLSA as alleged in the Lawsuit.  Section 216(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime wages and an equal amount of liquidated damages, plus attorney's fees and court costs.  The statute of limitations for FLSA suits requires the suit for unpaid minimum wage and/or overtime compensation must be filed within 2 years of a violation of the Act, except that a suit for a willful violation must be filed within 3 years of the violation.  Anderson should not sign this Agreement unless he believes it is a fair and reasonable settlement of the claim for back wages due under the FLSA as alleged in the lawsuit.

## 4.    MUTUAL RELEASES

The Parties specifically acknowledged that these General Releases were agreed upon without consideration of the FLSA claims at issue in the Lawsuit.

### A.    Anderson's General Release

(1)    Release and Waiver.  In exchange for the consideration from Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  to Anderson pursuant to Paragraph 2(e) above, Anderson does hereby forever discharge Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  from any and all liabilities, costs, obligations, causes of action, demands and/or claims of any nature whatsoever, whether arising at law or in equity, which Anderson may have had or may now have against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser , including, without limitation, **any claim for retaliation under Fla. Stat. §440.205, the right to seek remedies for wrongful discharge, the right to seek remedies under the Florida Civil Rights Act of 1992 and any predecessor thereof, the right to seek remedies under the Age Discrimination in**

3

Employment Act of 1967 (as amended) (the "ADEA"), and the right to seek remedies under the Civil Rights Act of 1964 (as amended), the Equal Pay Act of 1963 (as amended), the Veterans Readjustment Assistance Act of 1974 (as amended), the Americans with Disabilities Act of 1990 (as amended), the Federal Whistleblower Act, the Florida Whistleblower Act, and/or any other similar federal, state  or local law, for retaliation or discrimination on the basis of the Employee's membership in any other legally protected category (including, without limitation, race, color, religion, national origin, sex, handicap or disability, marital status, sickle cell trait, or disabled veterans and veterans of the Vietnam Era).

(2)    Notwithstanding any contrary provision herein, by executing this Agreement, Anderson is not waiving any rights or claims that arise after the date that Anderson signs this Agreement.

(3)    Nothing in the Release including that which is contained in Paragraph 4 shall be construed to prohibit Anderson from (i) filing a charge or complaint with the EEOC, NLRB, or other fair employment practices agency or (ii) participating in any investigation or proceeding conducted by the EEOC, NLRB, or other fair employment practices agency.

**B.    <u>Defendant's General Release of Anderson</u>**

(1)    As additional consideration to Anderson in exchange for the general release contained in Paragraph 4(A), Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  release and forever discharge Anderson from any and all claims, demands, damages, actions, causes of action, contracts, or suits in equity, of any kind whatsoever, arising out of the employment relationship between the Parties or termination of that relationship, and any agreements (including non-compete agreements or covenants not to compete) which may survive the employment period, whether known or unknown, from the beginning of the world to the date this Agreement is signed, provided however, that this release does not apply to the obligations of Anderson under this Agreement.

(2)    Notwithstanding any contrary provision herein, by executing this Agreement, Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser are not waiving any rights or claims that arise after the date that Anderson signs this Agreement.

(3)    Nothing in the Release, including that which is contained in Paragraph 4 shall be construed to release Anderson from any obligations under any non-compete agreements or covenants not to compete which may survive the employment period.

(4)    Nothing in the Agreement, including that which is contained in Paragraph 4, shall be construed to validate or invalidate other non-compete agreements or covenants not to compete that are not related to this action.

**5.    <u>ATTORNEY'S FEE AGREED UPON SEPARATELY</u>**

The attorneys' fees to be paid to Anderson's counsel under Paragraph 2(f) above were agreed upon separately and without regard to the amount paid to Anderson.  The total paid to Anderson's counsel is full and final payment to cover completely all fees and costs owed to

4

Anderson's counsel for his representation of Anderson in the Lawsuit. Any alleged obligation of Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser to Anderson for attorney's fees and costs is fully and finally satisfied by the payment to LaBar & Adams, P.A.

## 6. NO ADMISSION OF LIABILITY

It is understood and acknowledged by Anderson that Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser have denied, and still deny liability on the merits of the claim raised by Anderson and that this Agreement is entered purely as a compromise of disputed matters for avoiding the uncertainty associated with potential litigation and costs of defending such litigation. The settlement of Anderson's claims and the obligations created by this Agreement are not, and shall not be, construed as an admission of liability of the parties or any other person or entity on any claim.

## 7. DEFAULT

If Primo Management Group Inc., Israel Sanchez, Jr., or Sean Chesser fail to make any payment as required in Paragraph 2 above, Anderson shall be entitled to a consent judgment being taken jointly and severally against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser for the amounts stated, less any payments paid to Anderson under this Agreement. Further, if any party defaults under this Agreement, the non-breaching party shall have the right to specific performance of this Agreement in addition to any other remedies available to the parties. Further, the prevailing party shall be entitled to all attorney's fees and costs incurred in the enforcement of this Agreement, whether or not suit is brought, including but not limited to attorney's fees and costs incurred in any bankruptcy, trial or appellate proceeding.

## 8. SEVERABILITY AND INVALIDATION

The provisions of this Agreement are independent of, and severable from each other, and no provision shall be affected or rendered invalid or unenforceable because any other provision or provisions are invalid or unenforceable in whole or in part. Furthermore, if any provision of this Agreement is invalidated by a Court of competent jurisdiction, then all of the remaining provisions of this Agreement shall remain in full force and effect.

## 9. SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

## 10. ENTIRE SETTLEMENT AGREEMENT

This Agreement constitutes the entire agreement between the parties regarding the settlement of the Lawsuit, including all claims made or that could have been made by either party therein, and supersedes all prior negotiations, understandings, agreements, and arrangements, both oral and written, among the parties.

## 11. GOVERNING LAW

The laws of the State of Florida, excluding its choice of law provisions if such laws would result in the application of laws other than the laws of the State of Florida, shall govern any disputes between the parties to this Agreement, the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties to this Agreement.

## 12. COUNTERPARTS & ELECTRONIC TRANSMISSION

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. The parties agree that a signature page to this Agreement that is executed by a party and transmitted via facsimile or e-mail transmission shall have the same force and effect as an original signature page.

**THE PARTIES TO THIS AGREEMENT HEREBY CERTIFY THAT THEY HAVE READ ALL OF THE AGREEMENT AND FULLY UNDERSTAND ALL OF THE SAME.**

Dated: 6/14/19

Mark Anderson

By: _____

Dated: 6/25/19

Primo Management Group, Inc.

By: _____

Name: Israel Sanchez

Title: Owner / CEO

By: _____

Dated: 6/25/19

Israel Sanchez, Jr.

By: _____

6

Sean Chesser

Dated: 6/30

By:

Name: Sean Chesser

Title: Co-owner

## SETTLEMENT AGREEMENT AND RELEASE

This **SETTLEMENT AGREEMENT AND RELEASE** (this "**Agreement**") is made and entered into as of June 14, 2019, by and between Shana Wiles ("Wiles"), Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser (collectively referred to as "Parties").

## 1. **RECITALS**

This Agreement is made with reference to the following facts:

**A. WHEREAS,** Wiles has asserted claims under the Fair Labor Standards Act ("FLSA") in the lawsuit pending in the United States District Court Middle District of Florida, Orlando Division, Case No. 6:19-cv-184-Orl-31GJK (the "Lawsuit");

**B. WHEREAS,** Wiles asserts that if this matter were to proceed to trial, she would seek, based on a reasonable and just inference, compensation for an additional 600 hours of unpaid overtime which could result in a $19,000 judgment plus $57.25 in unpaid minimum wages (plus all other damages allowed by law including equal sums of liquidated damages);

**C. WHEREAS,** Wiles acknowledges that she will be receiving less that the full amount of her alleged overtime damages pursuant to the Agreement but asserts and affirms that this Agreement is a fair compromise to the Lawsuit;

**D. WHEREAS**, this Agreement is made as the result of a bona fide dispute between the Parties regarding the validity of the Lawsuit and the purported claim that underlies the Lawsuit;

**E. WHEREAS**, the Parties desire to amicably resolve the Lawsuit together with any and all Claims, as hereinafter defined, that Wiles may have against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser whether or not asserted in the Lawsuit; and

**F. WHEREAS**, the Parties have entered into good faith discussions resulting in this Agreement, and the Parties believe that this Agreement is in their mutual interest.

**NOW THEREFORE**, in consideration of the foregoing and other promises and mutual covenants contained herein, and other good and valuable consideration, receipt of which is hereby acknowledged, it is agreed as follows:

## 2. **PAYMENTS**

As consideration for this Agreement and the releases given herein, Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree as follows:

(a) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Wiles the sum of $9,500.00 for unpaid overtime hours worked which payment shall be reduced by any applicable withholding taxes and payroll deductions. This check shall be made payable to Wiles and an IRS Form W-2 shall be issued.

(b) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Wiles the sum of $9,500.00 for alleged liquidated damages, which amount shall not be subject to deductions or withholding. This check shall be made payable to Wiles and an IRS Form 1099-Misc shall be issued.

(c) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Wiles the sum of $57.25 for unpaid minimum wages which payment shall be reduced by any applicable withholding taxes and payroll deductions. This check shall be made payable to Wiles and an IRS Form W-2 shall be issued.

(d) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Wiles the sum of $57.25 for alleged liquidated damages related to minimum wages which amount shall not be subject to deductions or withholding. This check shall be made payable to Wiles and an IRS Form 1099-Misc shall be issued.

(e) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Wiles the sum of $500.00, as and for consideration of the General Release in Paragraph 4(A) of this Agreement. This check shall be made payable to Wiles and an IRS Form 1099-Misc shall be issued. The Parties specifically acknowledge that Wiles' general release was resolved separately and without consideration of the amount paid for the FLSA wage claim.

(f) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser agree to pay Wiles' attorney's fees and costs in the amount of $5,000.00 payable to the law offices of LaBar & Adams, P.A. for which a separate IRS Form 1099 shall issue to LaBar & Adams, P.A. The Parties acknowledge that Wiles' attorneys' fees were agreed upon separately and without regard to the amount paid to Wiles for unpaid overtime and liquidated damages. *See* Paragraph 5.

The payments described above shall be paid within fifteen (15) calendar days after the approval of this Agreement by the Court. For convenience, the payments in 2(a) and 2(c) may be combined into one payroll check (after withholdings). Similarly, the payments in 2(b), 2(d), and 2(e) may be combined into one check. Payment shall be delivered to Wiles' counsel, N. Ryan LaBar, LaBar & Adams, P.A., 2300 East Concord Street, Orlando, Florida 32803.

## 3.  RELEASE OF FLSA CLAIM

A.    In exchange for the payment outlined in Paragraphs 2(a)(b)(c)& (d) above, Wiles does hereby remise, release, satisfy, and forever discharge Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  from any all claims, liabilities, or damages for unpaid overtime

2

wages as alleged in the Lawsuit pursuant to the FLSA, liquidated damages, and attorney fees and costs.

B.    FLSA ACKNOWLEDGEMENT- This agreement releases claims for unpaid overtime and minimum wages, liquidated damages, attorney's fees and costs under the FLSA. Wiles acknowledges that this settlement is fair and reasonable.  Wiles also acknowledges the FLSA claim was the subject of a bona fide dispute between the Parties as to its validity and amount, and Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  have asserted that certain defenses apply to this claims including, without limitation, defenses relating to: (a) the FLSA does not apply to Wiles because of independent contractor status ; (b) Wiles not being entitled to receive overtime because of exemptions from the FLSA; (c) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's assertion that Wiles's claim was barred by  29 U.S.C. § 259; (d) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's 29 U.S.C. § 260 defense to liquidated damages; and (e) Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser 's defenses regarding knowledge of time claimed.

C.    NOTICE UNDER THE FAIR LABOR STANDARDS ACT- This agreement contains a waiver and release of overtime and minimum wage claims that Wiles has alleged under the FLSA.  Wiles' acceptance of this Agreement and payment under this agreement (which includes portion allocated to back unpaid overtime and minimum wages that Wiles has claimed as due under the FLSA) means that Wiles has given up any right to bring or continue a suit for wages under 216(b) of the FLSA as alleged in the Lawsuit.  Section 216(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime wages and an equal amount of liquidated damages, plus attorney's fees and court costs.  The statute of limitations for FLSA suits requires the suit for unpaid minimum wage and/or overtime compensation must be filed within 2 years of a violation of the Act, except that a suit for a willful violation must be filed within 3 years of the violation.  Wiles should not sign this Agreement unless she believes it is a fair and reasonable settlement of the claim for back wages due under the FLSA as alleged in the lawsuit.

## 4.  **MUTUAL RELEASES**

The Parties specifically acknowledged that these General Releases were agreed upon without consideration of the FLSA claims at issue in the Lawsuit.

### A.    **Wiles's General Release**

(1)    Release and Waiver.  In exchange for the consideration from Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser  to Wiles pursuant to Paragraph 2(e) above, Wiles does hereby forever discharge Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser from any and all liabilities, costs, obligations, causes of action, demands and/or claims of any nature whatsoever, whether arising at law or in equity, which Wiles may have had or may now have against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser   , including, without limitation, **any claim for retaliation under Fla. Stat. §440.205, the right to seek remedies for wrongful discharge, the right to seek remedies under the Florida Civil Rights Act of 1992 and any predecessor thereof, the right to seek remedies under the Age Discrimination in**

3

Employment Act of 1967 (as amended) (the "ADEA"), and the right to seek remedies under the Civil Rights Act of 1964 (as amended), the Equal Pay Act of 1963 (as amended), the Veterans Readjustment Assistance Act of 1974 (as amended), the Americans with Disabilities Act of 1990 (as amended), the Federal Whistleblower Act, the Florida Whistleblower Act, and/or any other similar federal, state or local law, for retaliation or discrimination on the basis of the Employee's membership in any other legally protected category (including, without limitation, race, color, religion, national origin, sex, handicap or disability, marital status, sickle cell trait, or disabled veterans and veterans of the Vietnam Era).

(2)    Notwithstanding any contrary provision herein, by executing this Agreement, Wiles is not waiving any rights or claims that arise after the date that Wiles signs this Agreement.

(3)    Nothing in the Release including that which is contained in Paragraph 4 shall be construed to prohibit Wiles from (i) filing a charge or complaint with the EEOC, NLRB, or other fair employment practices agency or (ii) participating in any investigation or proceeding conducted by the EEOC, NLRB, or other fair employment practices agency.

**B.    Defendant's General Release of Wiles**

(1)    As additional consideration to Wiles in exchange for the general release contained in Paragraph 4(A), Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser release and forever discharge Wiles from any and all claims, demands, damages, actions, causes of action, contracts, or suits in equity, of any kind whatsoever, arising out of the employment relationship between the Parties or termination of that relationship, and any agreements (including non-compete agreements or covenants not to compete) which may survive the employment period, whether known or unknown, from the beginning of the world to the date this Agreement is signed, provided however, that this release does not apply to the obligations of Wiles under this Agreement.

(2)    Notwithstanding any contrary provision herein, by executing this Agreement, Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser are not waiving any rights or claims that arise after the date that Wiles signs this Agreement.

(3)    Nothing in the Release, including that which is contained in Paragraph 4 shall be construed to release Wiles from any obligations under any non-compete agreements or covenants not to compete which may survive the employment period.

(4)    Nothing in the Agreement, including that which is contained in Paragraph 4, shall be construed to validate or invalidate other non-compete agreements or covenants not to compete that are not related to this action.

**5.  ATTORNEY'S FEE AGREED UPON SEPARATELY**

The attorneys' fees to be paid to Wiles' counsel under Paragraph 2(f) above were agreed upon separately and without regard to the amount paid to Wiles. The total paid to Wiles' counsel is full and final payment to cover completely all fees and costs owed to Wiles' counsel for his representation of Wiles in the Lawsuit. Any alleged obligation of Primo Management Group Inc.,

4

Israel Sanchez, Jr., and Sean Chesser to Wiles for attorney's fees and costs is fully and finally satisfied by the payment to LaBar & Adams, P.A.

## 6. NO ADMISSION OF LIABILITY

It is understood and acknowledged by Wiles that Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser have denied, and still deny liability on the merits of the claim raised by Wiles and that this Agreement is entered purely as a compromise of disputed matters for avoiding the uncertainty associated with potential litigation and costs of defending such litigation. The settlement of Wiles' claims and the obligations created by this Agreement are not, and shall not be, construed as an admission of liability of the parties or any other person or entity on any claim.

## 7. DEFAULT

If Primo Management Group Inc., Israel Sanchez, Jr., or Sean Chesser fail to make any payment as required in Paragraph 2 above, Wiles shall be entitled to a consent judgment being taken jointly and severally against Primo Management Group Inc., Israel Sanchez, Jr., and Sean Chesser for the amounts stated, less any payments paid to Wiles under this Agreement. Further, if any party defaults under this Agreement, the non-breaching party shall have the right to specific performance of this Agreement in addition to any other remedies available to the parties. Further, the prevailing party shall be entitled to all attorney's fees and costs incurred in the enforcement of this Agreement, whether or not suit is brought, including but not limited to attorney's fees and costs incurred in any bankruptcy, trial or appellate proceeding.

## 8. SEVERABILITY AND INVALIDATION

The provisions of this Agreement are independent of, and severable from each other, and no provision shall be affected or rendered invalid or unenforceable because any other provision or provisions are invalid or unenforceable in whole or in part. Furthermore, if any provision of this Agreement is invalidated by a Court of competent jurisdiction, then all of the remaining provisions of this Agreement shall remain in full force and effect.

## 9. SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

## 10. ENTIRE SETTLEMENT AGREEMENT

This Agreement constitutes the entire agreement between the parties regarding the settlement of the Lawsuit, including all claims made or that could have been made by either party therein, and supersedes all prior negotiations, understandings, agreements, and arrangements, both oral and written, among the parties.

## 11. GOVERNING LAW

The laws of the State of Florida, excluding its choice of law provisions if such laws would result in the application of laws other than the laws of the State of Florida, shall govern any disputes between the parties to this Agreement, the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties to this Agreement.

## 12. COUNTERPARTS & ELECTRONIC TRANSMISSION

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. The parties agree that a signature page to this Agreement that is executed by a party and transmitted via facsimile or e-mail transmission shall have the same force and effect as an original signature page.

**THE PARTIES TO THIS AGREEMENT HEREBY CERTIFY THAT THEY HAVE READ ALL OF THE AGREEMENT AND FULLY UNDERSTAND ALL OF THE SAME.**

Dated: 6-14-19

Shana Wiles

By:

Dated: 7/2/2019

Primo Management Group, Inc.

By:

DocuSigned by:

E7FAC7E55335478...

Name: Israel Sanchez

Title: owner

By:

Israel Sanchez, Jr.

By:

DocuSigned by:

E7FAC7E55335478...

Dated:

6

Dated: 6/30

Sean Chesser

By: _____

Name: Sean Chesser

Title: Co-owner